UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JOSEPH A. VERIVE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | Case No. 4:15-CV-01676-SNLJ-NCC |
| | ) | |
| DAN REDINGTON,[1] | ) | |
| | ) | |
| Respondent. | ) | |

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

This matter is before the court on the Petition and Amended Petition under 28 U.S.C. §
2254 for Writ of Habeas Corpus by a Person in State Custody filed by Petitioner Joseph Verive
("Petitioner").  (Docs. 1 and 7.)  This matter was referred to the undersigned United States
Magistrate Judge pursuant to 28 U.S.C. § 636(b).  (Doc. 5.)  After reviewing the case, the
undersigned has determined that Petitioner is not entitled to relief.  As a result, the undersigned
will **RECOMMEND** that the Petition be **DENIED** and the matter **DISMISSED**.

**I. BACKGROUND**

On December 6, 2012, Petitioner was charged by information with the Class C felony of
domestic assault in the second degree.  (Doc. 8-2 at 5.)  The information alleged that on August
3, 2012, Petitioner knowingly caused physical injury to the victim, M.B., by punching her in the
face, knocking her from her wheelchair, and pulling a lip piercing through her lip.  (*Id.*)
Petitioner and M.B. were married and have a child in common.  (*Id.*)  On December 6, 2012,
Petitioner was also charged by information with two additional felony counts.  While being held

---

[1]  Petitioner is currently incarcerated at the Tipton Correctional Center in Tipton, Missouri.
(Doc. 19.)  Dan Redington is the Warden and proper party respondent.  *See* 28 U.S.C. § 2254,
Rule 2(a).

in jail after he was arrested for the domestic assault charge, Petitioner knowingly escaped from confinement. (Doc. 8-9 at 1.) Therefore, he was charged by information of the Class D felony of escape from confinement. (*Id.*) In that same information, Petitioner was charged with the Class D felony of damage to jail property. (*Id.*) The information alleged that Petitioner knowingly damaged a shower unit at the Pike County Sheriff's Office by forcibly removing the shower unit, acting in concert with another. (*Id.*)[2]

On February 11, 2013, Petitioner pleaded guilty to all three charges as part of a package deal. (Doc. 8-1 at 90; Doc. 8-2 at 18–37.) He was sentenced to six years for the domestic assault charge, to run consecutive with his sentences for the two-year escape and two-year jail property convictions, for a total of ten years. (*Id.* at 27–28, 41.) Prior to the plea, Petitioner, who was fifty years of age and who had completed one year of community college, filed a Petition to Enter Plea of Guilty. (*Id.* at 7–15.) In that Petition, signed by Petitioner on each page, he acknowledged, "I have had all the time I need to talk with my attorney about the charge(s) made against me and what I intend to do about them" and that he wanted "to proceed without further delay." (Doc. 8-2 at 11.) He further acknowledged, "I am satisfied with my attorney's services. My attorney has done everything I have asked him or her to do on my case. He . . . has not refused to do anything I have asked on my case . . . . I have no complaints whatsoever about my attorney's services on my case." (*Id.*) He acknowledged that his attorney showed or shared with him copies of the police reports and that the attorney was effective and

---

[2]  Petitioner pleaded guilty to all three of these charges as part of a package deal and was sentenced accordingly. (Doc. 8-1 at 90; Doc. 8-2 at 7–42.) Although it was unclear whether he was challenging all three convictions in this Writ for Habeas Corpus, Petitioner clarified in his traverse that he is seeking to vacate the conviction on domestic assault in the second degree only. (Doc. 9 at 2.) In the state court, Petitioner ultimately moved to dismiss his post-conviction appeal of the escape and damage to property convictions, so those claims have not been properly exhausted and are procedurally barred. (*See* Docs. 8-16, 8-17, 8-18.)

competent in representing him. (*Id.* at 12.) These written acknowledgements were confirmed orally at Petitioner's plea hearing, at which he confirmed that his plea was free and voluntary, not made under threat. (*Id.* at 20–21.) Petitioner further confirmed that he was fully and completely satisfied with his attorney's services, that his attorney presented all of the evidence Petitioner requested in the cases, that his attorney did all Petitioner asked of him, and that he had no complaint of any kind against his attorney. (*Id.* at 19–20.) In exchange for Petitioner's guilty pleas, the State agreed to drop "Prior and Persistent Offender" language from the assault charge, which shortened the range of punishment. (*Id.* at 26–27.) The Circuit Court accepted Petitioner's plea. (*Id.* at 30–31.)

On April 15, 2013, Petitioner filed a *pro se* Motion to Vacate, Set Aside or Correct the Judgment or Sentence under Missouri Supreme Court Rule 29.15. (*Id.* at 50–66.) On October 24, 2013, Petitioner's appointed counsel filed an Amended Motion to Vacate, Set Aside or Correct Judgment and Sentence. (Doc. 8-3 at 1–22.) After conducting an evidentiary hearing, the post-conviction relief court denied Petitioner's post-conviction motion on February 8, 2013. (*Id.* at 23–27.) Petitioner filed an appeal raising the following two issues:

> (1) The motion court clearly erred in denying Mr. Verive's Rule 24.035 motion because he established that he pled guilty as a result of ineffective assistance of counsel, in that he proved that his plea attorney did not act as a reasonably competent attorney, in derogation of the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 18(a) of the Missouri Constitution, because his attorney failed to provide Mr. Verive with discovery, and such discovery would have revealed that no officer saw Mr. Verive assault his wife – which is contrary to what his attorney had told him, which is that "the officer says he saw you" – and but for counsel's ineffectiveness, Mr. Verive would have gone to trial because his wife had preexisting brain damage and is unable to accurately or competently provide testimony and no other witness saw the alleged assault.
>
> (2) The motion court clearly erred in denying Mr. Verive's Rule 24.035 motion because he established that he pled guilty as a result of ineffective assistance of counsel, in that he proved that his plea attorney did not act as a reasonably

competent attorney, in derogation of the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 18(a) of the Missouri Constitution, because the attorney failed to contact two witnesses – Robert Bailey and Kaylah Barlow – while leading Mr. Verive to believe that he had contacted them, and had the attorney actually investigated these witnesses, their testimony would reveal that M 's lip was swollen from an infected lip ring before the alleged incident and but for counsel's ineffectiveness, Mr. Verive would have a defense that M 's injury resulted from her lip ring and not from any action on the part of Mr. Verive, and had this information been discovered and communicated to Mr. Verive, he would have insisted on a trial instead of pleading guilty.

(Doc. 8-4 at 11–12.)  On November 2, 2015, the Missouri Court of Appeals for the Eastern

District, applying *Strickland*, affirmed the dismissal of Petitioner's post-conviction relief motion.

(Doc. 8-7.)

On November 2, 2015, Petitioner filed his Petition under 28 U.S.C. § 2254 for Writ of

Habeas Corpus by a Person in State Custody.  (Doc. 1.)  On December 14, 2015, before

Respondent filed its Response to Show Cause Order, Petitioner filed an Amended Petition for

Writ of Habeas Corpus.  (Doc. 7.)  Petitioner raises the following six grounds for relief:

(1)  Trial counsel was ineffective when he failed to provide Petitioner with any of the discovery material, failed to show Petitioner any of the discovery material, and/or failed to accurately inform, or inform Petitioner at all, of what the discovery material contained (Claim I) (*id.* at 2);

(2) Trial counsel was ineffective when he misled Petitioner as to what the arresting officer reported observing or committed fraud for the procurement of Petitioner's guilty plea (Claim II) (*id.*);

(3) Trial counsel was ineffective for failing to file a motion to suppress or challenge the competency of the victim to testify (Claim III) (*id.* at 3);

(4) Trial counsel was ineffective when he remained silent and failed to speak out at the plea hearing and inform Petitioner and the court that he did not interview any witnesses or investigate the case (Claim IV) (*id.*);

(5) Trial counsel was ineffective when he failed or refused to investigate the case (Claim V) (*id.* at 7); and

(6) Trial counsel was ineffective when he failed or refused to contact, interview, or depose any of Petitioner's witnesses (Claim VI) (*id.*).

Respondent filed a response on January 12, 2016.  (Doc. 8.)  Petitioner filed a traverse on

January 20, 2016 (Doc. 9), and an attachment to his traverse on February 3, 2016 (Doc. 10).[3]  As

a preliminary matter, because Petitioner's Amended Petition supersedes his original Petition, the

Court will recommend that Petitioner's original Petition be denied as moot.  *See In re Wireless*

*Tel. Fed. Cost Recovery Fee Litig.*, 396 F.3d 922, 928 (8th Cir. 2005) ("It is well-established that

an amended complaint supercedes an original complaint and renders the original complaint

without legal effect.").

## II.  DISCUSSION

"In the habeas setting, a federal court is bound by the AEDPA[4] to exercise only limited

and deferential review of underlying state court decisions."  *Lomholt v. Iowa*, 327 F.3d 748, 751

(8th Cir. 2003).  Under this standard, a federal court may not grant relief to a state prisoner

unless the state court's adjudication of a claim "resulted in a decision that was contrary to, or

involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States," or "was based on an unreasonable determination of the

facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

A state court decision is contrary to clearly established Supreme Court precedent if "the

state court arrives at a conclusion opposite to that reached by [the] Court on a question of law

or . . . decides a case differently than [the] Court has on a set of materially indistinguishable

---

[3]  On March 7, 2016, Petitioner also filed a Final Attachment to his Response in Opposition to
Respondent's Response to Order to Show Cause/Motion for Summary Judgment/and or Motion
for Evidentiary Hearing.  (Doc. 14.)  However, pursuant to the Case Management Order,
Petitioner was required to file a reply/traverse within sixty days of the answer to the
petition/response.  (Doc. 3.)  Therefore, the deadline for filing a reply was February 10, 2016.
Petitioner's Final Attachment was untimely, and Petitioner did not seek leave of Court to file this
document.  Therefore, the Court will not consider it in the analysis.  Even if the Court did, it
would not change the undersigned's recommendation, as it contains information that is largely
duplicative of the information contained in Petitioner's other timely filings.

[4]  The Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254.

facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A state court decision is an unreasonable application of clearly established federal law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* at 407–08. Finally, a state court decision involves an unreasonable determination of the facts in light of the evidence presented in the state court proceedings only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record. 28 U.S.C. § 2254(e)(1); *Ryan v. Clarke*, 387 F.3d 785, 790 (8th Cir. 2004).

All of Petitioner's claims raise ineffective assistance of counsel. "Judicial scrutiny of counsel's performance is highly deferential, indulging a strong presumption that counsel's conduct falls within the wide range of reasonable professional judgment." *Bucklew v. Leubbers*, 436 F.3d 1010, 1016 (8th Cir. 2006). The Supreme Court has provided specific guidance regarding analyzing ineffective assistance of counsel habeas claims involving pleas. As the Supreme Court recognized, "[p]lea bargains are the result of complex negotiations suffused with uncertainty, and defense attorneys must make careful strategic choices in balancing opportunities and risks." *Premo v. Moore*, 562 U.S. 115, 124 (2011). When deciding to plea, an individual inherently faces the potential opportunity of a better sentence or the potential risk of a worse one if the case were to move forward. *See id.* at 124–25. These opportunities and risks "make strict adherence to the *Strickland* standard all the more essential when reviewing the choices an attorney made at the plea bargain stage." *Id.* at 125. In the context of a plea, courts must take extra caution to "respect the latitude *Strickland* requires" and avoid applying a "hindsight perspective." *Id.* "'Hindsight and second guesses are also inappropriate, and often more so, where a plea has been entered without a full trial . . . . The added uncertainty that results when there is no extended, formal record and no actual history to show how the charges have played

-6-

out at trial works against the party alleging inadequate assistance . . . .'" *Bennett v. United States*, No. 4:14-CV-01438-RWS, 2015 WL 1809465, at *3 n.2 (E.D. Mo. Apr. 21, 2015) (quoting *Premo*, 562 U.S. at 132).  Deference "must be accorded counsel's judgment and perspective when the plea was negotiated," even in "the absence of a developed or an extensive record and the circumstance that neither the prosecution nor the defense case has been well defined." *Premo*, 562 U.S. at 126.

"Importantly, a petitioner has a heavy burden to overcome admissions the petitioner made at a plea hearing." *Twitty v. Russell*, No. 4:10-CV-01659-RWS, 2013 WL 3091433, at *15 (E.D. Mo. June 18, 2013).  "A 'defendant's representations during the plea-taking carry a strong presumption of verity and pose a formidable barrier in any subsequent collateral proceedings.'" *Id.* (quoting *Nguyen v. United States*, 114 F.3d 699, 703 (8th Cir. 1997)).

## A. Procedural Default

To avoid defaulting on a claim, a petitioner seeking habeas review must have fairly presented the substance of the claim to the state courts, thereby affording the state courts a fair opportunity to apply controlling legal principles to the facts bearing on the claim. *Wemark v. Iowa*, 322 F.3d 1018, 1020–21 (8th Cir. 2003) (quotation marks omitted).  A claim has been fairly presented when a petitioner has properly raised the same factual grounds and legal theories in the state courts that he is attempting to raise in his federal petition. *Id.* at 1021.  Claims that have not been fairly presented to the state courts are procedurally defaulted. *Id.* at 1022 (quoting *Gray v. Netherland*, 518 U.S. 152, 161–62 (1996)).  Claims that have been procedurally defaulted may not give rise to federal habeas relief, subject to a few narrow exceptions. *See*, *e.g.*, *Moore v. Wallace*, No. 4:14-CV-00872-SNLJ-JMB, 2017 WL 2608728, at *7 (E.D. Mo. May 2, 2017), *report and recommendation adopted*, No. 4:14-CV-00872-SNLJ, 2017 WL

4387375 (E.D. Mo. Oct. 3, 2017). For example, procedural default may not be excused unless Petitioner can demonstrate cause and prejudice for the default. *Wemark*, 322 F.3d at 1022. "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

Petitioner's Claims III and IV are procedurally defaulted and may not give rise to federal habeas relief. Moreover, for the reasons explained below, Petitioner's Claims I, V and VI are partially defaulted. While Petitioner asserts some very broad grounds for relief in his Amended Petition (Doc. 7), Petitioner pursued only two narrow claims in state post-conviction appeal: (1) plea counsel was ineffective for failing to provide Petitioner with the police report (Doc. 8-4 at 11–15, 18–22), and (2) plea counsel was ineffective for failing to investigate two specific witnesses, Robert Bailey and Kaylah Barlow (*id.* at 23).

"Ordinarily, a federal court reviewing a state conviction in a [federal habeas corpus] proceeding may consider only those claims which the petitioner has presented to the state court in accordance with state procedural rules." *Arnold v. Dormire,* 675 F.3d 1082, 1086–87 (8th Cir. 2012) (citation omitted). Missouri requires the raising of constitutional claims at the first available opportunity. *See Pullum v. Steele*, No. 4:10 CV-00618-RWS, 2013 WL 4768126, at *8–11 (E.D. Mo. Sept. 5, 2013) (citing Missouri case law). For Missouri prisoners, claims not raised on appeal from the denial of a post-conviction motion are procedurally defaulted. *Moore–El v. Luebbers,* 446 F.3d 890, 897–98 (8th Cir. 2006); *see also Storey v. Roper,* 603 F.3d 507, 523–24 (8th Cir. 2010) (not addressing the merits of a claim that the petitioner had failed to pursue on appeal from the denial of post-conviction relief); *Grace v. Norman*, No. 4:11-CV-00067 AGF, 2014 WL 1056829, at *5 (E.D. Mo. Mar. 19, 2014).

Under the circumstances, Petitioner has not complied with Missouri's requirements for the presentation of most of his federal habeas claims, Claims III, IV, and a portion of Claims I, V and VI.  Neither Claim III, relating to the alleged competency of the victim to testify, nor Claim IV, relating to trial counsel's failure to speak out at the plea hearing, were raised in the points on appeal.  (*See* Doc. 8-4.)  As a result, those claims are procedurally defaulted.  Claim I relates to the alleged failure of plea counsel to provide any discovery to Petitioner, but Petitioner only raised the failure to provide one discovery item, the police report, on appeal.  (*Id.* at 8-4 at 11–15, 18–22.)  Therefore, the undersigned finds that Claim I is procedurally defaulted to the extent it relates to the failure to provide discovery beyond the police report.  Claims V and VI both relate to the general failure to investigate and the failure to investigate any of Petitioner's witnesses.  However, the only investigational issue raised on appeal was plea counsel's alleged failure to investigate two specific witnesses, Robert Bailey and Kaylah Barlow.  (*Id.* at 23.)  Accordingly, to the extent Petitioner raises the investigation of witnesses other than Robert Bailey and Kaylah Barrow before the Court, those claims are procedurally defaulted.[5]  *See*, *e.g.*, *Sweet v. Delo,* 125 F.3d 1144, 1150 (8th Cir.1997) (finding one of the petitioner's claims was

---

[5]  The post-conviction appeal raised a very specific argument regarding Robert Bailey and Kaylah Barrow's possible testimony, namely that "their testimony would reveal that [the victim's] lip was swollen from an infected lip ring before the alleged incident and but for counsel's ineffectiveness, Mr. Verive would have a defense that [the victim's] injury resulted from her lip ring and not from any action on the part of Mr. Verive . . . ."  (Doc. 8-4 at 12.)  Petitioner makes additional arguments regarding their potential testimony in his traverse, including that they could testify the victim was delusional, made false accusations in the past, and would get out of her wheelchair at times.  (*See*, *e.g.*, Doc. 9 at 77–78, 81–83, 109–110.)  To the extent Petitioner raises arguments beyond what was presented in his post-conviction appeal, this Court will not consider those arguments.  *See*, *e.g.*, 28 U.S.C. § 2254(e); *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398–1401 (2011); *Ward v. Norris*, 577 F.3d 925, 935–36 (8th Cir. 2009) (rejecting attempt by petitioner to broaden impermissibly his ineffective assistance of counsel claim on federal habeas to include factual bases not raised before the state court, and instead limiting its review to facts from state court proceedings).

defaulted when petitioner "failed to raise it in his post-conviction appeal"); *Pullum*, 2013 WL 4768126, at *9 (finding multiple claims defaulted when Missouri petitioner failed to present them on appeal).

Citing *Martinez v. Ryan*, 566 U.S. 1 (2012), Petitioner suggests in his traverse that his procedural default of these claims should be excused for cause, arguing he received ineffective assistance of post-conviction motion counsel.[6]  (*See*, *e.g.*, Doc. 9 at 6, 16, 25, 101.)  The thrust of Petitioner's argument is that post-conviction motion counsel failed to develop these claims because he did not investigate and introduce every possible piece of discovery or investigate, subpoena, and call every possible witness.  The Supreme Court held in *Martinez v. Ryan* that:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

566 U.S. at 17.  However, *Martinez* does not apply in this instance.

Petitioner raised the defaulted or partially defaulted claims, Claims I,[7] III, IV, V, and VI, in his *pro se* Motion to Vacate, Set Aside or Correct the Judgment or Sentence.  (*See* Doc. 8-2 at 57–61.)  Petitioner concedes that these claims were raised in his *pro se* Motion.  (*See*, *e.g.*, Doc. 9 at 2.)  Petitioner's Amended post-conviction motion incorporated Petitioner's *pro se* Motion by reference.[8]  (Doc. 8-3 at 19.)  However, as noted above, Petitioner pursued only two narrow

---

[6]  Petitioner was represented by Mr. Pete Carter before the post-conviction motion court.  (Doc. 8-3 at 22.)  He had different post-conviction counsel on appeal.  (Doc. 8-4.)

[7]  Petitioner included a reference to the order of protection and a vague reference to the police report in his *pro se* motion.  (*See* Doc. 8-2 at 57.)  He made no mention of any photographic evidence.  (*See id.*)

[8]  In addition to incorporating Petitioner's *pro se* Motion by reference, Petitioner's Amended post-conviction motion highlighted some particular arguments:  (1) whether trial counsel was

claims on appeal: (1) plea counsel was ineffective for failing to provide Petitioner with the police report (Doc. 8-4 at 11–15, 18–22), and (2) plea counsel was ineffective for failing to investigate two specific witnesses, Robert Bailey and Kaylah Barlow (*id.* at 23). *Martinez* does not apply to claims not preserved on post-conviction appeal. *See Arnold v. Dormire*, 675 F.3d 1082, 1087 (8th Cir. 2012) ("*Martinez* offers no support, however, for the contention that the failure to preserve claims on appeal from a postconviction proceeding can constitute cause.").

Petitioner argues, contrary to Respondent's position, that the post-conviction motion court did not reject all of his claims, including the defaulted claims, on the merits. (Doc. 9 at 3.) Petitioner contends that the motion court addressed some, but failed to address all, of his claims. (*Id.*) As a result, he argues broadly that these claims were not adjudicated on the merits. (*See*, *e.g.*, *Id.* at 6, 16, 17, 22, 25.) Petitioner further argues he can show cause as to why these claims were not adjudicated on the merits because he received ineffective assistance of post-conviction counsel before the motion court, and *Martinez* therefore excuses the default. (*Id.*) The Court disagrees.

First, Petitioner's claims were adjudicated on the merits. *See*, *e.g.*, *Johnson v. Williams*, 568 U.S. 289, 303 (2013) (when state-court decision addresses some, but not all, of a petitioner's claims, there is a rebuttable presumption that the state court adjudicated the unmentioned claims on the merits); *Rainer v. Kelley*, 865 F.3d 1035, 1044 (8th Cir. 2017) (citing *Williams* with approval). This presumption is a "strong one" and will only be rebutted in "unusual circumstances." *Id.* at 302. The motion court specifically referenced both the *pro se* and amended motions in its decision. (Doc. 8-3 at 23–24.) Petitioner merely asserts the state court

---

ineffective for failing to show Petitioner any of the discovery, namely the police report and a petition for order of protection filed by the victim days after the assault, and (2) the testimony of two witnesses, namely Kaylah Barlow and Robert Bailey. (Doc. 8-3 at 6–8.)

-11-

did not address his claims.  This is not enough to rebut the presumption.  *See Dansby v. Hobbs*, 766 F.3d 809, 832 (8th Cir. 2014) (petitioner's observation that state court did not address claim not enough to rebut presumption).[9]

Second, because Petitioner's claims are presumed to be adjudicated on the merits, the narrow equitable exception in *Martinez* does not apply.  A similar argument was recently raised and rejected in this circuit:

> In *Martinez*, the habeas petitioner asserted that his post-conviction proceeding attorney failed to raise a claim for ineffective assistance of trial counsel. Because Martinez's ineffective assistance claim was not raised at the required time under state procedural rules, the claim was procedurally defaulted and he never obtained a review on the merits of the claim. Through the narrow exception created by the Supreme Court, Martinez was allowed to assert his initial-review collateral proceeding counsel's ineffectiveness as "cause" to excuse the default.
>
> In contrast, in *Pinholster*, the petitioner's ineffective assistance of trial counsel claim was not procedurally defaulted, but instead was raised and rejected on the merits in state court.  After considering the language of the statute, the Supreme Court held that in reviewing habeas claims under § 2254(d)(1), a federal court is limited to considering the record before the state court that adjudicated the claim, and is prohibited from receiving new evidence offered in support of the claim. 131 S. Ct. at 181–82.
>
> Petitioner's case is like *Pinholster* and is controlled by its holding. Similar to *Pinholster*, petitioner argues that his trial attorney was ineffective for failing to investigate and present exculpatory evidence. As in *Pinholster*, petitioner's arguments were raised and rejected on the merits in his state post-conviction proceeding.
> . . .

---

[9] *See also White v. State*, 57 S.W.3d 341, 343 (Mo. Ct. App. 2001) (under exception to Missouri post-conviction rule, "findings and conclusions are not required on an allegation if the court grants a hearing on the motion and the movant fails to present substantial evidence at the hearing to support that allegation").  Petitioner argues in his traverse that post-conviction appellate counsel was limited to raising only the two claims presented on appeal, taking issue with the general scope of the motion court's finding of facts and conclusions of law.  (Doc. 10 at 2.) However, as noted, the motion court is presumed to have adjudicated the issue on the merits. Moreover, to the extent Petitioner had an issue with the general scope of the motion court's decision, no such issue was presented on post-conviction appeal (*see* Doc. 8-4), and *Martinez* does not apply to defaulted appellate claims.

-12-

> Petitioner's case is easily distinguished from *Martinez*. Unlike the facts in *Martinez*, here petitioner's post-conviction counsel raised a claim that trial counsel was ineffective [for failing to investigate and discover potentially exculpatory evidence] . . . . Most importantly, unlike *Martinez*, petitioner received a state court adjudication on the merits of his ineffective assistance claim. *See Martinez*, 132 S. Ct. at 1316 (explaining that "if counsel's errors in an initial-review collateral proceeding do not establish cause to excuse the procedural default in a federal habeas proceeding, no court will review the prisoner's claims.").
>
> Because petitioner has received a ruling on the merits of his ineffective assistance of counsel claim, the rationale for *Martinez's* "narrow exception" is completely absent from his case and its holding does not apply here. *See Gray v. Zook*, 806 F.3d 783, 789 (4th Cir. 2015) ("*Martinez* permits a petitioner to excuse certain procedurally defaulted ineffective-assistance-of-trial-counsel claims. But if claims . . . were properly presented to the state court . . . then *Martinez* does not apply.") . . . *Cf. Arnold v. Dormire*, 675 F.3d 1082, 1087 (8th Cir. 2012) (where petitioner's ineffective assistance claims were litigated in his post-conviction proceeding, "unlike *Martinez*, Arnold has already had his day in court[.]").

*Foster v. Cassady*, No. 4:15-CV-225 CAS/SPM, 2016 WL 3564240, at *2–3 (E.D. Mo. June 22, 2016). *See also Escamilla v. Stephens*, 749 F.3d 380, 394 (5th Cir. 2014) ("*Martinez* does not apply to claims that were fully adjudicated on the merits by the state habeas court. . . . once a claim is considered and denied on the merits by the state habeas court, *Martinez* is inapplicable, and may not function as an exception to *Pinholster's* rule that bars a federal habeas court from considering evidence not presented to the state habeas court."); *Rhines v. Young*, 899 F.3d 482, 495 (8th Cir. 2018) (citing *Escamilla* with approval); *cf. Moore v. Mitchell*, 708 F.3d 760, 785 (6th Cir. 2013) (emphasis in original) (rejecting Petitioner's argument that the court "should remand to allow *factual development* of his allegation that *collateral* counsel was ineffective, and then, if collateral counsel is found ineffective on that newly developed record, permit that record to inform his ultimate claim for relief regarding whether *trial* counsel was ineffective. In other words, he wants this Court to grant him permission to obtain new facts to challenge the [state court's] rejection of his ineffective assistance of trial counsel claim . . . . *Pinholster* plainly bans

such an attempt to obtain review of the merits of claims presented in state court in light of facts that were not presented in state court. *Martinez* does not alter that conclusion."). That same analysis applies here. Therefore, Petitioner's argument under *Martinez* fails.

As *Martinez* does not apply and Petitioner has not shown some objective factor external to the defense impeded counsel's efforts to comply with the rule, Claims III and IV are procedurally defaulted, and Claims I, V, and VI are procedurally defaulted in part, as those claims were raised on initial post-conviction review but not on post-conviction appellate review. As such, the Court will recommend that those claims be denied as procedurally defaulted.

Moreover, even if *Martinez* applied or if the Court were to otherwise reach the merits of Petitioner's claims, the undersigned would still recommend that Petitioner's claims be denied for the following reasons.

First, the presumption of effective assistance of counsel can generally only be overcome when the ignored issues are clearly stronger than those presented. *Link v. Luebbers*, 469 F.3d 1197, 1205 (8th Cir. 2006). In this case, upon review of the record and addressed in more detail below, the undersigned finds that the claims specifically presented in the amended motion and pursued at the evidentiary hearing were the most meritorious claims. Therefore, post-conviction motion counsel's decision not to separately discuss the procedurally defaulted claims in the amended motion or pursue them during the evidentiary hearing "falls within the wide range of reasonable professional assistance" under *Strickland's* deferential standards. *See Strickland v. Washington*, 466 U.S. 668, 689 (1984); *see also Murphy v. King,* 652 F.3d 845, 850 (8th Cir. 2011), *cert. denied,* 132 S. Ct. 1596 (2012) (quoting *Murray v. Carrier,* 477 U.S. 478, 486 (1986)) (a failure to raise a claim "'despite recognizing it, does not constitute cause for a procedural default.'"). In Petitioner's lengthy traverse, he raises a variety of ways in which post-

conviction motion counsel was ineffective.  To summarize, Petitioner wanted counsel to present substantially more evidence than he did, including investigating and presenting every possible piece of evidence, calling every possible known witness, and engaging in very specific lines of questioning.  (*See*, *e.g.*, Doc. 9 at 98–114.)  In other words, Petitioner takes issue with the strategy post-conviction motion counsel employed at the evidentiary hearing.  As is clear from Petitioner's filings, particularly his traverse, Petitioner essentially asked post-conviction motion counsel to put on an entire trial at the post-conviction evidentiary hearing, calling every potential witness and presenting every possible claim, regardless of the strength of that potential testimony or those potential claims.  (*See*, *e.g.*, Doc. 9 at 84, 86, 98–115.)  However, counsel had wide latitude in making such strategic decisions both before and during the evidentiary hearing, including presenting the most meritorious claims.  *See*, *e.g.*, *Mills v. Armontrout*, 926 F.2d 773, 774 (8th Cir. 1991) (citation omitted) ("Generally, trial strategy and tactics are not cognizable in a federal habeas corpus proceeding."); *Bowman v. Russell*, No. 4:12-CV-0955-JCH, 2015 WL 687179, at *9 (E.D. Mo. Feb. 18, 2015).  More fundamentally, post-conviction motion counsel expressed that he was limited as to what he could raise due to Petitioner's plea, as counsel clearly explained to Petitioner in a lengthy letter discussing his strategy before the motion court.  (*See* Doc. 1-10 at 3–4.)  "[A]pplying a heavy measure of deference to counsel's judgments," post-conviction counsel's strategic decisions were therefore supported by reasonable professional judgments. *See Strickland v. Washington*, 466 U.S. 668, 668 (1984).  Based on a review of the record as a whole, the undersigned does not find that post-conviction counsel strategic decisions fell below an objective standard of reasonableness.

Second, even if the Court were to find that motion counsel was ineffective, the default may be excused *only if* any of the eliminated grounds of ineffective assistance of trial counsel was "substantial," "which is to say that the prisoner must demonstrate that the claim has some

merit." *Martinez*, 566 U.S. at 14. While the undersigned finds that post-conviction counsel did not provide ineffective assistance of counsel, the undersigned will, out of an abundance of caution, analyze whether the grounds were substantial.[10] The undersigned does not find that to be the case here. Therefore, post-conviction counsel was not ineffective for failing to pursue or present these unsubstantial claims on post-conviction review.

In considering whether the ineffective assistance claims alleged in the procedurally defaulted claims are substantial, the Court must evaluate the claims under the standard set in *Strickland*. *See Sund v. Young*, No. 5:14-CV-05070-KES, 2015 WL 4249405, at *4 (D.S.D. July 13, 2015) (listing cases). Therefore, for an ineffective assistance of counsel claim to be substantial, a habeas petitioner must show that: "(1) his counsel so grievously erred as to not function as the counsel guaranteed by the Sixth Amendment; and (2) his counsel's deficient performance prejudiced his defense." *Auman v. United States*, 67 F.3d 157, 162 (8th Cir. 1995) (citing *Strickland*, 466 U.S. at 687). The "performance" prong of *Strickland* requires a showing that "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690. To overcome this presumption, a petitioner must prove that, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. *Id.* Even if a petitioner satisfies the performance component of the analysis, he is not entitled to

---

[10] Petitioner relies heavily on exhibits outside of the post-conviction state court record in his amended petition and traverse. Respondent argues the Court may not consider most of the thirty exhibits Petitioner filed because they were not presented in state court. (Doc. 8 at 9.) Petitioner argues those exhibits should have been submitted but were not, due to ineffective assistance of post-conviction counsel. (Doc. 9 at 3.) The undersigned reviewed those exhibits, as relevant, for the limited purpose of determining whether Petitioner's procedurally defaulted claims are excused.

relief unless he can prove sufficient prejudice. *Id.* at 697. To do so, a petitioner must prove that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 669. The court is not required to address both components of the effective assistance of counsel inquiry if a petitioner makes an insufficient showing on one component. *Id.* at 697.[11]

*Claim I: Discovery Material*

Post-conviction counsel chose to focus on the failure of trial counsel to provide the police report to Petitioner in the post-conviction amended motion and on appeal. (*See* Docs. 8-1, 8-3.) Petitioner argues that post-conviction counsel also should have discussed and proffered evidence regarding the victim's petition for an order of protection and photographs. (*See* Doc. 9.) Petitioner asserts that trial counsel was ineffective in failing to provide, show, or accurately inform him of the petition or photographs before he pleaded guilty. (*Id.*) However, for the reasons below, the undersigned finds that these claims are not substantial.

*Petition for order of protection*

Petitioner asserts that trial counsel's failure to provide him with or otherwise inform him of a petition of order of protection filed by the victim soon after the assault constitutes ineffective assistance of counsel. (Doc. 9 at 95–97.) As background, Petitioner asserts that his wife was in a car accident, resulting in a severe brain injury. (*Id.* at 76, 88.) He repeatedly asserts that she is extremely delusional and makes up false accusations. (*See, e.g.*, Doc. 7 at 21; Doc. 9 at 18, 19,

---

[11] As a threshold matter, the undersigned finds that Petitioner, in his lengthy traverse, makes new or more detailed arguments that he did not make in his Amended Petition for Writ of Habeas Corpus, thus depriving Respondent the opportunity to respond to those arguments. (*Compare* Doc. 7 *with* Docs. 9 and 10.) To the extent any of these arguments can be construed as raising new grounds for relief in his reply, the undersigned recommends that they be denied, as the Court may address claims raised in his Amended Petition only. *See Ruth v. Missouri*, No. 11-3487-CV-S-RED-P, 2012 WL 2194152, at *9 (W.D. Mo. June 14, 2012); *Scott v. Fondren*, No. CIV. 09-762 RHK/JJG, 2009 WL 3855926, at *3 (D. Minn. Nov. 17, 2009).

36, 43, 77, 96.)  Petitioner argues that had he known of the contents of her petition, he would not have pleaded guilty.  (Doc. 9 at 97.)  For example, Petitioner argues that the petition indicates that he punched their baby, who was present during the alleged assault, whereas the police report contains no such statement.  (*See*, *e.g.*, Doc. 7 at 14.)  He also argues that the petition indicates he "tried" to rip out the victim's lip ring, but the police report says he did rip it out.  (*Id.*)

The undersigned finds that Petitioner's claim fails under the performance prong. Petitioner received the *ex parte* order relating to the petition before entering a plea (Doc. 7 at 5), but there is no indication in the record he asked plea counsel for any additional information regarding the order.  Petitioner stated in his Petition to enter Plea of Guilty that plea counsel "has done everything I have asked him  . . . to do on my case" and that his attorney "has been effective and competent in representing me."  (Doc. 8-7 at 3.)  During his plea hearing, Petitioner again confirmed he was fully and completely satisfied with plea counsel's services and had no complaint of any kind against him.  (*Id.*)  Petitioner has not met his heavy burden of overcoming admissions he made at the plea hearing.  *See Nguyen*, 114 F.3d at 703.

The undersigned further finds Petitioner cannot demonstrate prejudice.  Even accepting any argued inconsistencies, when viewed as a whole, the information contained in the petition is consistent with an assault of the victim.  For example, the petition states Petitioner punched the victim.  (Doc. 8-3 at 16, 19.)  This is consistent with the probable cause statement, which Petitioner concedes he reviewed before pleading.  (Doc. 7 at 5.)  The petition further indicated the victim felt he would have killed her if an arresting officer had not heard her scream, which also was consistent with the officer's account in the probable cause statement of entering the residence upon hearing a female screaming for help.  (*See* Doc. 8-3 at 16, 19.)  The petition contains additional damaging information, including allegations that Petitioner repeatedly

-18-

physically and mentally abused the victim and threatened to kill her and their son, (*id.* at 16.), which could have further weakened his case.  And, though he ultimately pleaded to ten years, Petitioner concedes he was faced with the possibility of twenty-nine years in prison if he had not pleaded.  (Doc. 8-3 at 14.)  Had he not pleaded, he was facing fourteen years in prison on the escape and damage to jail property charges alone.  (Doc. 8-1 at 3–4; Doc. 10.)  *See also* Mo. Rev. Stat §§ 558.011.1, 558.016.7.  Moreover, even if the victim's statements contained some inconsistencies, and as the appellate court noted in analyzing other potentially impeaching testimony discussed in the merits section, Petitioner was still faced with the arresting officers' report noting the victim had bruised and swollen cheeks and a bruised and swollen eye.  (Doc. 8-7 at 9–10.)  The officers also reported hearing what sounded like the smacking of skin and then seeing the victim on the floor out of her wheelchair screaming at the Petitioner to "stop."  (*Id.* at 10.)  In light of all of this, along with the victim's reaffirmation at the post-conviction evidentiary hearing that Petitioner hit her, the undersigned cannot say Petitioner established a reasonable probability that he would have demanded a trial or that an outcome would have been different.  (*See id.*)

As a result, the undersigned finds Petitioner has not demonstrated that this rises to a level that is so substantial as to excuse the procedural default.

*Photographs*

As an initial matter, Petitioner makes no mention of the photographs in his *pro se* Motion to Vacate, Set Aside or Correct the Judgment or Sentence under Missouri Supreme Court Rule 29.15, in his attachments to that Motion, or in his *pro se* supplement attached to post-conviction counsel's Amended Motion.  Instead, he mentions only the police report and order of protection. (*See* Docs. 8-2 at 57, 8-3 at 10–11, 14.)  He concedes, however, that he knew of the photographs

at that time.[12]  (*See* Doc. 9 at 99.)  Therefore, there is no colorable argument to be made that he presented this known issue to the state courts.  However, in the interests of justice, the undersigned will address Petitioner's argument relating to this discovery.  Petitioner asserts that the state disclosed the existence of a CD containing photos during discovery but that his plea counsel did not follow up and obtain those photographs.  (Doc. 7 at 15; Doc. 1-8 at 1.)  Though he has not seen those photographs, Petitioner contends they are exculpatory and speculates they would show that the victim did not have injuries consistent with an assault.  (*See*, *e.g.*, Doc. 7 at 16, Doc. 9 at 83–84, 98–99, 113.)

First, the undersigned finds that Petitioner has not met his showing under the "performance" prong of *Strickland*.  As will be discussed more below in the merits section, the post-conviction appellate court found that, given Petitioner's decision to plea, plea counsel stopped trial preparation and instead worked to get the best deal he could for Petitioner.  (*See* Doc. 8-7 at 9.)  The court further found that Petitioner was very involved in the plea negotiations up to the day he pleaded guilty.  (*Id.*)  In light of Petitioner's request to plead guilty, his involvement in the plea negotiations, and the fact that the trial setting was months away, the court found that it was reasonable under the circumstances for counsel to focus on the plea agreement instead of following up on additional discovery.  (*See id.*)  Though the appellate court did not specifically address the photographs since that issue was not presented, the court's reasoning applies with equal force here.   Thus, the undersigned finds that plea counsel's failure to obtain the photographs did not fall below an objective standard of reasonableness.

---

[12]  Petitioner concedes he knew of the photographs as of September 27, 2013.  (Doc. 9 at 99.)  The Amended Motion and *pro se* supplement were filed before the motion court on October 24, 2013.  (Doc. 8-3 at 22.)

Second, even assuming the performance prong was not met, the undersigned finds that Petitioner cannot establish sufficient prejudice. As Petitioner has not seen the photos, there is no firm support for his argument that the photographs would be exculpatory. It is unknown, for instance, whether the CD would even include photos of the victim. Regardless, Petitioner was still faced with the officer's statement that he heard a slap as well as the victim's repeated statements that Petitioner hit her, as noted in the probable cause statement, in the police report, and in her testimony at the plea hearing. (*See* Docs. 8-1 at 65, 69; 8-3 at 18–19.) And, as noted above, he was facing twenty-nine years but pleaded to ten. (Doc. 8-3 at 14.) Thus, the undersigned cannot say Petitioner established a reasonable probability that the result would have been different.

### *Claim III: Motion to Suppress or Challenge to Competency of the Victim*

As previously noted, Petitioner asserts that his wife suffered a severe brain injury, resulting in memory problems and delusions. (*See*, *e.g.*, Doc. 9 at 76, 88.) Based on the record, the undersigned finds that trial counsel's decision not to specifically pursue a motion to suppress or otherwise challenge the victim's competency did not fall below an objective standard of reasonableness.

As an initial matter, Petitioner's plea offer was conditioned on him waiving his preliminary hearing. (Doc. 9 at 75.) It was clear that the offer "would be off the table," if Petitioner failed to waive his preliminary hearing. (*Id.*) Therefore, it was objectively reasonable for plea counsel to assume that filing a motion to suppress could have jeopardized the plea negotiations. Further, as discussed above, it was also objectively reasonable for counsel to focus on the plea negotiations instead of developing the case.

Petitioner has not established any challenge to the victim's competency would be meritorious.  Under Mo. Rev. Stat. § 491.060, Missouri courts presume that a witness is competent unless there is a prior adjudication of mental incompetence and the witness is in a mental institution.  *State v. Newlon*, 963 S.W.2d 295, 297 (Mo. App. E.D. 1997).  Despite Petitioner's contentions, there is no evidence in the record that she was previously found to be incompetent and put in a mental institution.  To demonstrate that a witness is incompetent, the witness must exhibit some mental infirmity and fail the test for competence.  *State v. Robinson*, 835 S.W.2d 303, 307 (Mo. 1992). Under the test for competence, the witness is competent if the witness:  (1) understands the obligation to speak truthfully; (2) had the capacity to observe the occurrence that is the subject of the witness's testimony; (3) has the capacity to remember the occurrence; and (4) has the capacity to translate the occurrence into words.  *Id.*  In her testimony before the motion court, the victim stated that while she had some memory problems right after she wrecked her car, she denied having ongoing memory problems.  (Doc. 8-1 at 63–64.)  At the evidentiary hearing, the victim also demonstrated an ability to remember and to testify about the assault.  (*Id.* at 64–66.)  In light of the evidence, an objectively reasonable counsel would have concluded that a motion to exclude the victim's testimony likely would not have succeeded. Trial counsel cannot be found to be ineffective for failing to raise a non-meritorious issue.  *See*, *e.g.*, *Thomas v. United States*, 951 F.2d 902, 904 (8th Cir. 1991) (counsel not ineffective for failure to raise meritless issue).  The Supreme Court has recognized that strict deference to counsel under the *Strickland* reasonableness standard is "all the more essential" at the plea stage, particularly when analyzing counsel's decision not to file an early motion that was likely to fail. *See Premo*, 562 U.S. at 124–27.  Therefore, even if competent counsel would have filed a motion

challenging the victim's ability to testify before trial, the undersigned finds plea counsel did not act unreasonably in postponing any such motion pending plea negotiations.

*Claims IV, V & VI:  Investigation/Investigation of Witnesses*

Petitioner argues that plea counsel's failure to investigate all aspects of the case, including the failure to investigate all witnesses, before he pleaded guilty amounted to ineffective assistance of counsel.  (*See*, *e.g.*, Doc. 9 at 22–47.)

As an initial matter, and in light of Supreme Court directives, the undersigned rejects any notion that plea counsel must investigate each and every avenue of a case, including each and every potential discovery item and each and every potential witness, in order to have acted reasonably under *Strickland*.  *See*, *e.g.*, *Premo*, 562 U.S. at 126 ("In the case of an early plea, neither the prosecution nor the defense may know with much certainty what course the case may take.  It follows that each side, of necessity, risks consequences that may arise from contingencies or circumstances yet unperceived.  The absence of a developed or an extensive record and the circumstance that neither the prosecution nor the defense case has been well defined create a particular risk that an after-the-fact assessment will run counter to the deference [under *Strickland*] that must be accorded counsel's judgment and perspective when the plea was negotiated, offered, and entered.").

In addition to citing discovery such as the police report, petition for order of protection, and photographs, which the undersigned has already addressed or will address below, Petitioner's main argument for these claims centers around the sufficiency of plea counsel's investigation into witnesses.  Therefore, the undersigned's analysis will focus on the witnesses. Based on a review of the record, the undersigned finds that Petitioner fails to establish the requisite prejudice necessary to avoid procedural default.  The crux of Petitioner's argument is

-23-

that he would not have pleaded guilty if he knew counsel had not investigated all of his witnesses. However, a review of the record demonstrates that Petitioner had a firm grasp on what these witnesses would say going into his plea. In fact, Petitioner wrote a variety of letters to plea counsel stating how those witnesses would testify in his defense. For example, on or about October 29, 2012—two months after the assault and more than a month before Petitioner was formally charged—Petitioner wrote a letter to plea counsel outlining in detail the testimony a variety of witnesses could provide in his defense. (*See* Doc. 1-8 at 2.) Those witnesses included Chris Bove (victim's father), Bob Bailey, Karen (stepmom), Erica Oppeau (victim's sister), Officer Priest, Lori Flannigan (DFS worker), Detective Corey Anderson, Kayla Welch, and Stacy Elliot. (Doc. 1-8 at 7–8; *see also* Doc. 1-9 at 8–9.) None of these individuals witnessed the assault. (*See* Doc. 9.) Before entering a plea, Petitioner contended their testimony supported his theory of the case, including that the victim had made false accusations, was delusional, had been aggressive in the past, would get out of her wheelchair at times, did not sustain the injuries noted in the police report, and had a previously infected lip due to her lip ring. (Doc. 1-8 at 7–8; *see also* Doc. 1-9 at 8-9.) Petitioner makes the same arguments based on those witnesses in his post-conviction pleadings. (*See*, *e.g.*, Doc. 9 at 78–83.)

Thus, it is apparent from the record that Petitioner knew going into the plea what the witnesses likely would say in support of his defense. Even with that in mind, Petitioner still chose to plead guilty. Therefore, it is inconsistent for Petitioner to subsequently claim that plea counsel should have conducted investigation of all of those witnesses while also negotiating a plea deal. Petitioner fails to demonstrate that such investigation would have revealed anything other than what he already knew—anything other than what he had written down in his own words in advance of the plea. In fact, Petitioner specifically argued in his post-conviction *pro se*

motion that the "witnesses would have benefitted him at trial and that his attorney had a duty to contact them *after movant informed his attorney of those witnesses and what they could testify to*." (emphasis added) (Doc. 8-3 at 13.)  This is not a situation where the case proceeded to trial and witnesses were not presented to a jury, thus potentially prejudicing the defendant.  *See*, *e.g.*, *Premo*, 562 U.S. at 131 (noting "[t]here are certain differences between inadequate assistance of counsel claims in cases where there was a full trial on the merits and those, like this one, where a plea was entered").  Instead, this is a case where Petitioner knew going into the plea what those witnesses likely would say in his defense yet still chose to enter the plea.  Any claim that he would gone to trial if counsel had contacted those witnesses (to presumably confirm what Petitioner repeatedly claimed to have already known) is not credible.  Even assuming their testimony would have actually aided in his defense as he posits, the undersigned cannot find that Petitioner was prejudiced by counsel's alleged ineffectiveness under these circumstances.

Similar reasoning applies to Petitioner's argument that plea counsel was ineffective or committed fraud by failing to speak out at his plea hearing when the court asked Petitioner whether counsel interviewed all of the witnesses in this case, to which Petitioner answered "I believe so."  (Doc. 8-2 at 35.)  Even assuming without deciding that plea counsel was under an obligation to correct the record when the court was questioning Petitioner and that counsel acted unreasonably in failing to do so, Petitioner cannot demonstrate he was prejudiced by this, for the same reasons stated above.[13]

---

[13]  Petitioner argues that plea counsel violated ethical rules in not speaking when the court questioned Petitioner at the plea hearing.  *But see Burt v. Titlow*, 571 U.S. 12, 24 (2013) ("[T]he Sixth Amendment does not guarantee the right to perfect counsel; it promises only the right to effective assistance, and we have held that a lawyer's violation of ethical norms does not make the lawyer *per se* ineffective.")

*Conclusion*

Because Petitioner cannot demonstrate that plea counsel's representation fell below the standard required by *Strickland* or that he suffered prejudice, he cannot show cause under *Martinez* to excuse his procedural default. As the lines of inquiry are parallel, even if the Court were to find that the ineffective assistance of counsel claims in Claims III, IV and the substantially defaulted I, V, and VI were substantial and could overcome the procedural default bar, the above-detailed *Strickland* analysis applies and the undersigned would recommend the denial of those claims on the merits. Moreover, to the extent Petitioner asserts that the cumulative effect of these alleged errors would have resulted in a different outcome, "[e]rrors that are not unconstitutional individually cannot be added together to create a constitutional violation." *Wainwright v. Lockhart*, 80 F.3d 1226, 1233 (8th Cir. 1996) (citation omitted). *See also Middleton v. Roper*, 455 F.3d 838, 851 (8th Cir. 2006) ("a habeas petitioner cannot build a showing of prejudice on a series of errors, none of which would by itself meet the prejudice test.") (internal quotation marks and citation omitted).

Furthermore, as Petitioner has failed to establish a showing of cause or prejudice for his procedural default, the Court may reach the merits only if Petitioner establishes that a failure to consider its merits will result in a fundamental miscarriage of justice. *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). "Procedurally barring a claim that establishes actual innocence is considered a fundamental miscarriage of justice." *Cox v. Burger*, 398 F.3d 1025, 1031 (8th Cir. 2005). A showing of actual innocence requires new evidence and a "show[ing] that 'it is more likely than not that no reasonable juror would have convicted him in light of th[at] new evidence." *Osborne v. Purkett,* 411 F.3d 911, 920 (8th Cir. 2005) (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)); *accord House v. Bell,* 547 U.S. 518, 536–39 (2006) (*Schlup* standard applies to determine

whether defaulted claims in a first federal habeas petition should be considered based on actual innocence).  "'Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim.'"  *Cagle v. Norris,* 474 F.3d 1090, 1099 (8th Cir. 2007) (quoting *Schlup,* 513 U.S. at 316).

Despite his guilty plea, Petitioner maintains his innocence on the assault charge.  (*See*, *e.g.*, Doc. 7 at 6; Doc. 9 at 68.)  However, Petitioner has not submitted any new evidence of his actual innocence.  To the extent he is arguing that the photographs would constitute new evidence, he is not in possession of the photographs.  (Doc. 9 at 84.)  Moreover, as discussed above, there is no indication that any such photographs would exculpate Petitioner as he so speculates.  As a result, the record does not support a determination that Petitioner's actual innocence necessitates consideration of the merits of Petitioner's defaulted claims.

Therefore, the undersigned will recommend that Claims III and IV be denied as procedurally defaulted.  The undersigned further recommends that Claim I be denied as procedurally defaulted to the extent it relates to the failure to provide discovery beyond the police report.  The undersigned finally recommends that Claims V and VI be denied as procedurally defaulted to the extent they relate to the investigation of witnesses other than Robert Bailey and Kaylah Barrow.

**B. Merits**

In Petitioner's remaining claims, Claims II and the portion of Claims I, V, and VI that are not procedurally defaulted, Petitioner asserts that trial counsel provided ineffective assistance of

counsel.[14]  In order to state a claim of ineffective assistance of trial counsel, Petitioner must

demonstrate that his counsel's performance was deficient and that he was prejudiced by that

performance.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  Deficient representation

means counsel's conduct fell below the conduct of a reasonably competent attorney.  *Id.*  To

establish prejudice, Petitioner must show "a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.

Federal habeas review of a *Strickland* claim is highly deferential, because "[t]he question is not

whether a federal court believes the state court's determination under the *Strickland* standard was

incorrect but whether the determination was unreasonable — a substantially higher threshold."

*Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (internal quotations and citations omitted); *see*

*also Williams v. Roper*, 695 F.3d 825, 831 (8th Cir. 2012) (quoting *Harrington v. Richter*, 562

U.S. 86, 102 (2011) (the unreasonableness standard was "meant to be difficult to meet" and

"'[e]ven a strong case for relief does not mean the state court's contrary conclusion was

unreasonable.'")  The court is not required to address both components of the effective assistance

of counsel inquiry if a petitioner makes an insufficient showing on one component.  *Id.* at 697;

*see also Worthington v. Roper*, 631 F.3d 487, 498 (8th Cir. 2011) ("Failure to establish either

*Strickland* prong is fatal to an ineffective-assistance claim.").

---

[14]  Petitioner relies heavily on exhibits outside of the post-conviction state court record in his
amended petition and traverse.  Respondent argues the Court may not consider most of the thirty
exhibits Petitioner filed because they were not presented in state court.  (Doc. 8 at 9.)  Petitioner
argues those exhibits should have been submitted but were not, due to ineffective assistance of
post-conviction counsel.  (Doc. 9 at 3.)  However, as the undersigned has found post-conviction
counsel was not ineffective and many of Petitioner's claims are procedurally defaulted, the Court
may not properly consider Exhibits E, F, G, M, N, O, Q, R, T, U, V, X, Y, Z, BB, CC, and DD in
its analysis on the merits.  *See Cullen v. Pinholster*, 131 S. Ct. 1388, 1398–1401 (2011) (court
review of claims is limited to whether the state courts unreasonably denied petitioner's claims
based on the state court record).

"Taken together, AEDPA and *Strickland* establish a 'doubly deferential standard' of review.  *Williams*, 695 F.3d at 831 (quoting *Cullen v. Pinholster*, 563 U.S. 170, 202 (2011)).  In the context of a plea, "[t]he assessment of prejudice first requires a state court to 'make a predictive judgment about the effect of the alleged deficiencies of counsel' on the reasonable probability that the petitioner would have insisted on going to trial and then requires the federal habeas court to 'give substantial deference to the state court's predictive judgment.'" *Twitty v. Russell*, No. 4:10-CV-01659-RWS, 2013 WL 3091433, at *15 (E.D. Mo. June 18, 2013) (quoting *Williams,* 695 F.3d at 831 (8th Cir. 2012)).

### *Claims I & II: Failure to Provide, Show or Accurately Inform Petitioner of the Police Report*

In the portion of Claim I that is not procedurally defaulted and in Claim II, [15] Petitioner asserts that trial counsel was ineffective for failing to provide Petitioner with a copy of the police report or otherwise accurately inform him of the contents of the report.  (Doc. 7 at 2.)  Petitioner asserts plea counsel misled Petitioner or committed fraud in order to induce Petitioner to plea. (*Id.*)  Though he has no witnesses or other support for his contention, Petitioner contends that the arresting officer told him on the night of the arrest that he was going to say he saw Petitioner hit the victim.  (*Id.* at 7.)  Before pleading guilty to the charges, Petitioner reviewed the arresting officer's Probable Cause Statement.  (*Id.* at 5.)  In that Statement, the arresting officer stated:  "I approached the residence . . . . I heard a loud sound that sounded similar to the smacking of skin. The loud sound was followed by a female screaming: 'Stop, I am sorry.'  I heard the voice of a male, known to me as Joseph Verive yelling at the female . . . . I heard Verive tell [the victim] that he was going to kill her. . . . I went to the front of the residence [and] observed [the victim]

---

[15]  While Petitioner may not articulate Claim II in a manner identical to his first claim on post-conviction appeal, Petitioner's Claim II is sufficiently similar to his first point on post-conviction appeal for purposes of avoiding procedural default.

lying on the floor in the living room with her wheelchair knocked over." (Doc. 8-3 at 19.) In that Statement, the officer also reported that the victim told him Petitioner pulled on her lip ring and punched her in the mouth. (*Id.*) Petitioner argues that he requested a copy of the police report. (Doc. 7 at 9, 14.) Petitioner argues that his "concern was that the arresting officer may be claiming that he observed Mr. Verive hit the alleged victim due to the arresting officer telling Mr. Verive, on the night of his arrest, that he was going to say such, and if that were true, and the arresting officer did falsely report, in the police report, that he saw Mr. Verive hit alleged victim, Mr. Verive did not believe that he could defend against such testimony from the arresting officer and would be convicted at trial." (Doc. 9 at 13.) He thought the police report might be different from the probable cause statement and thought the report might include a statement that the officer saw Petitioner hit the victim. (Doc. 7 at 5; Doc. 9 at 4.) While plea counsel discussed the contents of the police report with Petitioner before his plea, Petitioner argues that counsel misled him about the contents, and Petitioner did not receive a copy of it until after the plea. (Doc. 7 at 9, 14.) When Petitioner reviewed the report after his plea, he determined that the police report was nearly identical to the probable cause statement and did not state the officer saw Petitioner hit the victim. (Doc. 7 at 14.) Petitioner contends that had he been provided with a copy of the report or otherwise been informed of its contents, he would not have pleaded guilty but would have insisted on a trial, contending he had a viable defense absent an eyewitness. (*See*, *e.g.*, Doc. 9 at 4.)

The post-conviction motion court found Petitioner did not receive ineffective assistance of counsel. (Doc. 8-3 at 27.) In so concluding, the motion court rejected Petitioner's argument that plea counsel did not review discovery with him, finding plea counsel reviewed discovery with the Petitioner at the jail. (*Id.* at 25.) While plea counsel did not leave discovery with

Petitioner, the motion court noted that counsel indicated he usually did not leave copies with incarcerated clients because in the past, discovery had circulated around the jail, which led to jailhouse snitches.  (*Id.*)  The court further noted plea counsel testified that if discovery got into the hands of another inmate, he could claim Petitioner told him things that he would not have known unless Petitioner told him or unless they read it in the discovery.  (*Id.*)  The motion court relied heavily on a credibility determination, finding that the Petitioner's contention that his plea was not knowingly and voluntarily entered was not credible.  (*Id.* at 26.)  The motion court relied on the Movant's representations in his written plea petition and plea testimony, finding Petitioner was satisfied with his attorney's services, the decision to plead guilty was Petitioner's alone, that he entered the plea knowingly and voluntarily, and that he acknowledged under oath that he committed the crimes.  (*Id.*)  Despite this, Petitioner told the motion court at the post-conviction evidentiary hearing that he lied at the plea stage to get the deal.[16]  Thus, the motion court found Petitioner was "willing to lie under oath to get what he wants at the time."  (*Id.* at 26–27.) However, while the motion court did not believe Petitioner's testimony, it did believe plea counsel's testimony.  (*Id.* at 27.)  Therefore, the motion court specifically found that plea counsel did review discovery with Petitioner and used the degree of skill, care, and diligence of a reasonably competent attorney.  (*Id.*)  Under all of the circumstances—particularly Petitioner's repeated assertions that he was satisfied with counsel and his plea was voluntary—the motion

---

[16]  Petitioner argues the motion court erroneously found, "At the post-conviction relief hearing, he told the Court that he lied at the plea to get the deal."  (Doc. 8-3 at 26; Doc. 9 at 60.) Petitioner testified at the post-conviction evidentiary hearing that he was sworn to tell the truth at the plea hearing.  (Doc. 8-1 at 43.)  When asked by the prosecutor whether he lied when he said he committed the charges, Petitioner answered, "Absolutely," explaining "I thought I had to tell that, to say I did it in order for the guilty plea to be accepted and to go through, sure."  (*Id*. at 43.) Therefore, the motion court's statement accurately reflected the testimony and did not amount to an unreasonable determination of the facts.  Any reliance by the post-conviction courts on this testimony in assessing Petitioner's credibility was justified and reasonable.

court concluded that Petitioner knowingly and voluntarily entered the plea and did not receive ineffective assistance of counsel.  (*Id.*)

Applying *Strickland*, the post-conviction appellate court affirmed the motion court's decision.  (Doc. 8-7 at 1, 6, 10.)  The court rejected Petitioner's argument that had plea counsel provided him with discovery, he would have known the police report did not state that the police saw Petitioner punch victim and he would not have gone to trial.  (*Id.* at 7.)  In reaching this conclusion, the appellate court first deferred to the motion court's credibility determination that plea counsel's testimony was credible and Petitioner's was not.  (*Id.*)  The post-conviction appellate court acknowledged that plea counsel stated he read the police reports to Movant.  (*Id.*)  In further support of the motion court's finding that plea counsel reviewed and discussed discovery with movant, the post-conviction appellate court relied heavily on Petitioner's statements in his plea petition and at his plea hearing.  (*Id.*)  As a result, the court concluded that since Petitioner did not establish plea counsel failed to provide him with discovery, he did not show plea counsel was ineffective, and his claim therefore failed the performance prong of the *Strickland* test.  (*Id.* at 8.)

The post-conviction appellate court reasonably applied *Strickland*.  The post-conviction appellate court, in analyzing the performance prong of *Strickland*, identified the correct governing legal rule and reasonably applied it to the Petitioner's case.  Petitioner argues that certain statements in the motion court's findings regarding plea counsel's review of the discovery with Petitioner were contrary to the record.[17]  At the evidentiary hearing, plea counsel

---

[17]  Specifically, Petitioner, cites to the motion court's decision and maintains the following motion court findings are contrary to the record:  "Counsel testified that he reviewed all discovery with the Movant at the county jail" (Doc. 8-3 at 25); (2) "Counsel did testified [sic] that he showed and discussed all discovery with the Movant" (*id.*); "The Court specifically finds that Counsel did review all discovery with Movant . . . ." (*id.* at 27); and "While Movant claims

testified, in part, that he "took his files with [him] to the jail and discussed the police reports with [Petitioner]."  (Doc. 8-1 at 79.)  While the motion court did make findings regarding plea counsel reviewed, showed, or discussed all discovery with Petitioner, the scope of what Petitioner presented on post-conviction appeal was much narrower, as Petitioner's appeal on discovery was limited to the police report only.  (Doc. 8-4 at 11.)  Accordingly, the post-conviction appellate court ultimately focused its discussion on the police reports.  For example, in framing its decision, the appellate court stated: "Movant argues that if plea counsel had provided him with discovery, he would have known the police report did not state that the police saw Movant punch the victim and he would have gone to trial.  We disagree."  (Doc. 8-7 at 7.)  While the post-conviction appellate court referenced the broader conclusions from the motion court regarding discovery, the post-conviction appellate court appropriately narrowed its decision to the police report.  *See Rhines v. Young*, 899 F.3d 482, 490 (8th Cir. 2018) ("When a habeas claim has been adjudicated on the merits by the state courts, we review 'the last reasoned decision of the state courts.'") (quoting *Worthington v. Roper*, 631 F.3d 487, 497 (8th Cir. 2011).

In reaching its decision, the post-conviction appellate court noted that the "motion court found the testimony of plea counsel credible and the testimony of Movant not credible."  (Doc. 8-7 at 7.)  The appellate court cited Missouri law holding that the motion court was not required to believe Petitioner's testimony and that the appellate court must defer to the motion court's credibility determination.  (*Id.*)  Therefore, the appellate court deferred to the credibility determination about the extent of Petitioner's knowledge regarding discovery.  (*Id.*)  In its decision, the appellate court noted that Movant testified plea counsel did not "tell him what [the discovery] contained."  (*Id.* at 4.)  "In contrast to [Petitioner's] testimony," the appellate court

that counsel never showed him the discovery, counsel, Hugh Nisbet, testified otherwise" (*id.* at 25).  (*See* Doc. 7 at 19.)

noted "plea counsel maintained he went over the police reports with Movant and discussed them with him before Movant pleaded guilty.  Plea counsel stated he read the reports to Movant, but did not give him copies."  (*Id.*)  There is clear support in the transcript for the appellate court's statements, as Petitioner testified "No. No." when asked if his attorney told him what was in the discovery (Doc. 8-1 at 15), and the court's recitation of plea counsel's testimony is also accurate (*id.* at 77, 79.)  Moreover, Petitioner openly testified that he had lied.  (*Id.* at 43.)  Therefore, the appellate court's decision was not based on an unreasonable determination of the facts.  Instead, the appellate court, "after reviewing the entire record" (Doc. 8-7 at 5), reasonably deferred to the credibility determination based on facts presented in the state court proceeding.  This Court must do the same and grant the state court's credibility determination deference.  *Marshall v. Lonberger,* 459 U.S. 422, 434 (1983) (a federal habeas court has "no license [under § 2254(d)] to redetermine the credibility of witnesses whose demeanor has been observed by the state ... court"); *Kennedy v. Kemna*, 666 F.3d 472, 484 (8th Cir. 2012) (holding "we must defer to the credibility determinations of the motion court"); *Smulls v. Roper*, 535 F.3d 853, 864 (8th Cir. 2008) ("A federal court can only grant habeas relief if the state court's credibility determinations were objectively unreasonable based on the record.").  Based on the credibility determination and record as a whole, it was reasonable for the appellate court to accept plea counsel's account that he reviewed and discussed the police report with Petitioner before the plea.

The undersigned further finds plea counsel's decision to read the report instead of giving him a copy did not fall below the conduct of a reasonably competent attorney.  Petitioner takes issue with plea counsel's discussion of the report with him, arguing he was misled as to the contents, leaving Petitioner to believe that the arresting officer actually stated in the police report that he saw Petitioner hit the victim.  (*See*, *e.g.*, Doc. 9 at 3–4, 52–55.)  He argues plea counsel

should have shown him the report and committed fraud to induce Petitioner into entering a plea. (Doc. 7 at 2; Doc. 9 at 55.)  However, when asked about the police reports, plea counsel testified at the evidentiary hearing, "I'd gone through the police reports with him [when visiting him at the jail]" and "I did read it to him."  (Doc. 8-1 at 77, 79.)  Moreover, plea counsel offered a reasonable explanation for not giving Petitioner a copy of the report.  As the appellate court noted, "Plea counsel explained he did not generally give copies of discovery to incarcerated persons in order to prevent prison 'snitches' from gaining access to them and feigning knowledge of the case that could be used against the person in custody."  (Doc. 8-7 at 4.)  This accurately reflects plea counsel's testimony at the evidentiary hearing.  (Doc. 8-1 at 77–78.) There is no evidence that Petitioner insisted at that meeting that he see the document.  Based on plea counsel's testimony that he read the police reports and made a strategic decision not to leave a copy, coupled with the credibility determination, the appellate court reasonably applied the *Strickland* test in concluding counsel was not ineffective.  Particularly given the deferential standard on habeas review and the strong presumption that counsel used professional judgment, the undersigned refuses to disturb the state court's decision.  *See Lomholt*, 327 F.3d at 748; *Bucklew*, 436 F.3d at 1010.

Moreover, Petitioner's plea statements factored heavily into the post-conviction appellate court's decision that Petitioner failed to establish plea counsel was ineffective.  As the appellate court noted,

> Prior to his plea, Movant signed a written petition to enter plea of guilty. Movant stated in the petition: "I am satisfied with my attorney's services. My attorney has done everything I have asked him … to do on my case. He … has not refused to do anything I have asked on my case." Movant also stated: "My attorney has shown to me or shared with me copies of the police reports and other documents that he … has obtained in investigating my case."

> At the plea hearing, Movant testified he had read, signed and accurately filled out the petition to enter plea of guilty. Movant stated he was fully satisfied with the services his attorney had rendered to him. After the court accepted his plea of guilty and sentenced him, Movant again confirmed he was fully and completely satisfied with the services plea counsel had rendered as his attorney. Movant agreed plea counsel had done all that Movant had asked him to do and that he had no complaint of any kind against him.

(Doc. 8-7 at 3.)  Based on the deference to the motion court's credibility determination, the undersigned cannot say the appellate court unreasonably applied *Strickland* or that Petitioner overcame the heavy burden to overcome admissions made during the plea process.  *See Nguyen v. United States*, 114 F.3d 699, 703 (8th Cir. 1997) ("defendant's representations during the plea-taking carry a strong presumption of verity and pose a formidable barrier in any subsequent collateral proceedings.")

Finally, Petitioner's ultimate concern was that he was going to be "convicted on the false testimony of a cop."  (Doc. 8-1 at 33–34; Doc. 9 at 60–61.)  He was certain the arresting officer was going to lie and say he saw Petitioner hit the victim.  (*See*, *e.g.*, Doc. 7 at 7.)  When discussing the plea deal, Petitioner expressed his concern over the possibility that the officer "is going to go up there lying."  (Doc. 8-1 at 33.)  The evidentiary hearing transcript confirms Petitioner and plea counsel discussed this risk. (Doc. 8-1 at 33.)  Petitioner recognized this risk when he testified, "I'm not going to get convicted on the false testimony of a cop and end up with a million years."  (*Id.* at 34.)  Even so, Petitioner focuses on one particular part of plea counsel's testimony at the hearing where plea counsel stated, "I'd gone through the police reports with him and I said the officer says he saw you."  (Doc. 8-1 at 77, 79.)  Petitioner interprets this statement to mean counsel told him the officer stated in the report that he saw Petitioner hit the victim.  However, plea counsel testified he read the police report to Petitioner, and, as discussed above, the appellate court and this Court reasonably defers to the credibility

determination on this point.  Moreover, regardless of the police report's substance, to the extent Petitioner had concerns the officer might testify differently at trial, no amount of discovery or discussion would have definitively resolved that issue before trial.  This Court must be particularly deferential when assessing counsel's decisions regarding unknown risks at the plea stage, even in the absence of a developed record.  *See Premo*, 562 U.S. at 124–126.  As discussed in more detail below, because of this risk plus the other evidence of an assault, the victim's reaffirmation at the evidentiary hearing that Petitioner hit her, and the fact that Petitioner was facing twenty nine years in prison if he did not plead, the undersigned further finds Petitioner has not established prejudice.

Based on the totality of the state court record, the undersigned finds that the post-conviction appellate court neither based its decision on an unreasonable determination of the facts nor unreasonably applied the law.  Taking extra caution to "respect the latitude *Strickland* requires" when reviewing the choices of counsel at the plea stage, the Court declines to apply a hindsight perspective or second guess counsel's decisions.  *Premo*, 562 U.S. at 125.  Therefore, the undersigned will recommend the portion of Claim I that is not procedurally defaulted and Claim II be denied.

### Claims V & VI: Failure to Investigate Robert Bailey and Kaylah Barlow

In the portions of Claims V and VI that are not procedurally defaulted, Petitioner asserts that trial counsel was ineffective for failing to investigate Robert Bailey and Kaylah Barlow. (Doc. 9 at 77–78, 81–83, 109–110.)  Petitioner argues that their testimony would have aided in his defense.  (*See id.*)  Mr. Bailey testified at the post-conviction evidentiary hearing before the motion court that the victim wore a lip ring and that her lip was swollen and infected before the

assault. (Doc. 8-1 at 52–53.) Ms. Barlow similarly testified that the victim's lip was red, swollen, and infected prior to the assault. (*Id.* at 57–58.)

The motion court found that while plea counsel did not interview Mr. Bailey and Ms. Barlow, that decision was not unreasonable. (Doc. 8-3 at 27.) Based on the testimony at the evidentiary hearing, the court noted that the trial was months away, counsel had not begun trial preparation, and Petitioner reached out to counsel and asked counsel to work out a plea agreement on terms Petitioner accepted. (*Id.* at 25, 27.) The court found Petitioner was very involved in the plea negotiations, asking counsel to make different proposals to the prosecutor, and that Petitioner's involvement continued up until, and including the day of, the plea. (*Id.* at 25.) Therefore, the court found that counsel's reason for not talking to those witnesses prior to the guilty plea was sound (*id.* at 25) and that he used the degree of skill, care, and diligence of a reasonably competent attorney (*id.* at 27.) Moreover, the court specifically found that Mr. Bailey and Ms. Barlow's testimony would not have constituted an absolute defense to the charges, so it was not unreasonable for counsel to assist the defendant in entering a guilty plea.[18] (*Id.* at 27.) The court noted that the victim testified at the evidentiary hearing that Petitioner did hit her.[19]

---

[18] Petitioner argues in his traverse that he was not required to show an "absolute defense," but only a plausible or viable defense. (Doc. 9 at 109–110). As discussed below, the post-conviction appellate court independently found Petitioner failed to establish by a reasonable probability that he would have proceeded to trial because the witnesses' testimony did not provide a defense to other injuries in evidence. Therefore, any claim that the state court applied the incorrect governing legal rule is moot. *See Smulls v. Roper*, 535 F.3d 853, 862 (8th Cir. 2008) (even if the trial court erred, "the error does not support habeas relief if the state appellate court correctly applied federal law").

[19] Petitioner argues the motion court erroneously found that that victim testified "[Petitioner] did in fact hit her." (Doc. 8-3 at 25; Doc. 9 at 57.) Petitioner attempts to argue that the victim did not directly say that Petitioner hit her but instead just testified that she told the prosecutor that Petitioner hit her. (*See* Doc. 9 at 57.) The Court is not convinced by this argument, as it does not advance Petitioner's position. The victim testified at the post-conviction evidentiary hearing that she told the prosecutor "he hit me and knocked me out of my chair," and she later again confirmed in her testimony that she told the prosecutor Petitioner hit her. (Doc. 8-1 at 65, 69.)

(*Id.* at 25.) As when analyzing the police report, the court also relied on its determination that Petitioner's testimony that his plea was unknowing and involuntary was not credible given his repeated assertions that he was satisfied with counsel and that his plea was voluntary. (*Id.* at 26–27.) Therefore, the motion court denied Petitioner's motion to vacate the sentence. (*Id.* at 27.)

Applying *Strickland*, the post-conviction appellate court affirmed the motion court's decision. (Doc. 8-7 at 1, 3, 6.) First, the court found that plea counsel acted reasonably. In doing so, the court focused on plea counsel's testimony at the hearing. (*Id.* at 9.) The court noted that plea counsel testified Petitioner notified him shortly after he began representing him that he wanted to plead guilty. (*Id.*) As a result, "plea counsel stated that he 'stopped working for a trial' and 'work[ed] to get the best deal [he could] for [Movant].'" (*Id.*) (alterations in original). The court also noted that plea counsel testified Petitioner was very involved in the plea negotiations right up to the day he pleaded guilty in February 2013. (*Id.*) The court further noted that the trial was set for May 2013. (*Id.*) In light of Petitioner's request to plead guilty, his extensive involvement in plea negotiations, and the fact that the trial setting was months away, the post-conviction appellate court found "it was reasonable under the circumstances for counsel to focus on the plea agreement instead of contacting witnesses." (*Id.*) In addition, the court found that Petitioner's multiple assurances in his written plea and testimony at the plea hearing that he was fully satisfied with plea counsel's services provided further support of its decision on this prong. (*Id.*) Second, the post-conviction appellate court found that Petitioner failed to demonstrate prejudice. (*Id.* at 6, 9–10.) While Mr. Bailey and Ms. Barlow confirmed the victim

---

As such, there is no argument to be made that the trial court's statement amounted to an unreasonable determination of the facts. Therefore, any statements in the state court decisions that the victim testified Petitioner hit or made contact with victim enjoy support in the record. Moreover, the motion court's statement was made in connection with its discussion of a potential *Brady* violation, a claim Petitioner abandoned on appeal. (*See* Doc. 8-4.)

had a swollen and infected lip piercing, the court found that only Mr. Bailey definitively testified that he saw the lip prior to the offense.  (*Id.* at 9.)  The court then focused on the arresting officer's observations.  (*Id.* at 9–10.)  In addition to the lip injury, the court noted that the arresting officer also noted the victim had other injuries, a bruised and swollen cheeks and a bruised and swollen eye.  (*Id.*)  The police also reported what sounded like the "smacking" of skin and then saw the victim on the floor out of her wheelchair screaming at Petitioner to "stop." (*Id.* at 10.)  The court further noted that the victim confirmed at the evidentiary hearing that Petitioner hit her.  (*Id.*)  As a result, the court found that even if Mr. Bailey and Ms. Barlow provided an alternate explanation for the victim's swollen lip, it did not mean Petitioner did not rip the piercing from her lip.  (*Id.*)  The court further found that their explanation did not provide a defense to the victim's other injuries.  (*Id.*)  Therefore, the court concluded Petitioner "failed to establish" by a "reasonable probability" that even if plea counsel had contacted them prior to the plea, he would have proceeded to trial instead of pleading guilty.  (*Id.* at 9–10.)

The Missouri courts reasonably applied *Strickland*.  The Missouri courts' determination that Petitioner's plea counsel was not ineffective and that Petitioner made a knowing, intelligent, and voluntary plea was reasonable and supported by the record.  First, the post-conviction appellate court properly found that counsel's decision to focus on the plea instead of pursuing additional investigation of these two witnesses was reasonable.  A review of the evidentiary hearing transcript confirms the post-conviction appellate court's findings that Petitioner requested to plead guilty soon after plea counsel began representing him, that Petitioner was extensively involved in the plea negotiations, and that the trial was months away are consistent

with the testimony proffered by plea counsel at the hearing.[20]  (*See* Doc. 8-1 at 73, 75, 77.)  *See also Strickland*, 466 U.S. at 691 ("inquiry into counsel's conversations with the defendant" inform "a proper assessment of counsel's investigation decisions").  While Petitioner argues that plea counsel needed to investigate every witness, including these witnesses, before his plea, that position is contrary to the case law.  *See, e.g., Premo*, 562 U.S. at 126.  The post-conviction motion and appellate courts also reasonably relied on Petitioner's representations in his petition for plea and plea hearing regarding his satisfaction with counsel's services.  *See, e.g.*, *Nguyen*, 114 F.3d at 703 ("defendant's representations during the plea-taking carry a strong presumption of verity"); *Cotton v. Steele*, No. 4:15-CV-00806-AGF, 2018 WL 3020209, at *3 (E.D. Mo. June 18, 2018) ("Petitioner's representations at the plea hearing defeat his claim"); *Gilliam v. Minor*, No. 4:14-CV-1496-SPM, 2017 WL 4310262, at *5 (E.D. Mo. Sept. 28, 2017) ("state courts'

---

[20]  Petitioner argues the motion court erroneously found "Movant requested to work out a plea deal as quickly as possible" (Doc. 8-3 at 27), arguing "there is no testimony from anyone that supports this finding of fact." (Doc. 9 at 61).  Plea counsel testified that in the same month he began representing Petitioner, Petitioner sent him a letter indicating "he wanted to make a deal with the State so that this could get resolved."  (Doc. 8-1 at 26, 73.)  Soon thereafter, and months before the trial was set, Petitioner testified, "I thought, my God, you know, I just need to get this done."  (*Id.* at 34, 75.)  Therefore, the motion court's finding was not unreasonable.  Moreover, Petitioner does not contest the post-conviction appellate court's findings in support of its decision, namely that Petitioner requested to plead guilty soon after plea counsel began representing him, that Petitioner was extensively involved in the plea negotiations, and that the trial was months away.

Petitioner also argues the motion court erroneously found that the victim "testified that she now has memory problems" (Doc. 8-3 at 24), for when asked at the post-conviction evidentiary hearing if she had any memory problems, she actually stated "Not anymore.  I used to."  (Doc. 9 at 56; Doc. 8-1 at 63.)  She clarified that she had memory problems right after she wrecked her car, and she did not testify that she did not remember the assault.  (Doc. 8-1 at 65.)  While the trial court made the noted statement in its decision, it did not rely on that statement in the reasoning for its decision regarding the claims at issue here, the police report and witnesses.  Moreover, the post-conviction appellate court did not rely on this fact at all in rendering its decision.  Therefore, Petitioner has not established that the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court hearing.

findings that Petitioner's counsel was not ineffective and that Petitioner made a voluntary and intelligent choice to plead guilty are well-supported by Petitioner's own statements [in plea petition and at hearing] and the record as a whole"); *Crawley v. Moore*, No. 4:04-CV-887 CAS, 2007 WL 2811088, at *5 (E.D. Mo. Sept. 24, 2007) (petitioner did not establish counsel's constitutionally ineffective performance when court carefully questioned petitioner at plea hearing to ensure plea was voluntarily, finding statements made on record at plea hearing "undermine[d]" petitioner's claims that counsel was ineffective for failing to provide petitioner with copy of police report).  Moreover, as discussed above, the trial court's credibility determination was not unreasonable given Petitioner's testimony that he lied.  Given the sentence Petitioner was facing and Petitioner's early request to resolve the case, counsel made a reasonable choice to opt for a quick plea bargain instead of conducting additional investigation. At the very least, the state courts were not unreasonable to so conclude.  *See Premo*, 562 U.S. at 127 (quick plea bargain appropriate when petitioner was facing a more significant sentence absent a plea and when "prospects at trial were  . . . anything but certain").  Therefore, the state courts reasonably determined that plea counsel's actions did not fall below the conduct of a reasonably competent attorney in choosing to focus on the plea.

Moreover, even assuming plea counsel's decision fell below the conduct of a reasonably competent attorney, the Court finds that the post-conviction appellate court also properly found that Petitioner failed to establish prejudice.  The post-conviction appellate court specifically found that the witnesses' testimony would not have provided a defense to the victim's other injuries, holding that Petitioner did not establish with a reasonable probability that he would have demanded a trial.  The facts cited by and relied upon by the post-conviction appellate court relating to the arresting officers' observations of the victim's other injuries are supported by the

state court record.  (*See*, *e.g.*, Doc. 8-3 at 18–19.)  In light of these facts, the undersigned cannot

find that, but for trial counsel's alleged error, the outcome of Petitioner's case would have been

any different.  *Strickland*, 466 U.S. at 694; *Hadley v. Groose*, 97 F.3d 1131, 1135 (8th Cir. 1996)

(quotation and citation omitted) ("To establish prejudice from counsel's failure to investigate a

potential witness, a Petitioner must show that the witness would have testified and that their

testimony would have probably changed the outcome . . . ."); *Dorsey v. Steele*, No. 4:08-CV-

02005-CEJ, 2012 WL 966818, at *5 (E.D. Mo. Mar. 21, 2012) ("In order to be entitled to relief

on the ground that counsel failed to call witnesses, the petitioner must . . .  establish that . . . their

testimony would have provided a viable defense.")  The post-conviction appellate court

reasonably applied the relevant standards to the supported facts of Petitioner's case in making its

decision, and this Court finds no reason under relevant authority for disturbing that decision.

This is particularly so given that Petitioner was facing twenty-nine years in prison, as the offer

was a package deal for him to plea to all three, which Petitioner understood.  (Doc. 8-1 at 33–35,

82–84, 90.)

Therefore, particularly given the strong presumption of the verity of Petitioner's

statements during the plea process, the undersigned will recommend that claims V and VI, to the

extent they were not procedurally defaulted, be denied on the merits.

## C.  Evidentiary Hearing

Petitioner requests an evidentiary hearing on his claims.  (*See* Doc. 9 at 1, 102–115.)  An

evidentiary hearing on a habeas petition is mandatory only if a petitioner was denied a "full and

fair hearing in a state court, either at the time of the trial or in a collateral proceeding."

*Townsend v. Sain*, 372 U.S. 293, 312 (1963).  The court need not hold an evidentiary hearing if

the petitioner fails to allege facts sufficient to justify habeas relief.  *Id.*; *see also Cotton v. Steele*,

No. 4:15-CV-00806-AGF, 2018 WL 3020209, at *3 (E.D. Mo. June 18, 2018) ("'Eighth Circuit precedent permits district courts to deny evidentiary hearings attacking a guilty plea where the knowing and voluntary nature of the plea is established by the record.'") (quoting *Roberts v. Griffith*, No. 4:16-CV-00241-RWS, 2018 WL 2364295, at *3 (E.D. Mo. May 24, 2018)) (citing *Tran v. Lockhart*, 849 F.2d 1064, 1068 (8th Cir. 1998)).  Upon careful consideration, the Court has determined that Petitioner's claims do not entitle him to relief on any of the grounds asserted in his Amended Petition.  The Court concludes that no ground of the Amended Petition requires further evidentiary development for its resolution.  Furthermore, Petitioner fails to demonstrate that an evidentiary hearing is warranted under the applicable standards set forth in 28 U.S.C. § 2254(e)(2).  Thus, the undersigned will recommend that Petitioner's request for an evidentiary hearing be denied.

### III.  CONCLUSION

For the reasons stated above, the Court finds that Petitioner is not entitled to federal habeas relief.  Furthermore, Petitioner has failed to make a substantial showing of the denial of a constitutional right, which requires a demonstration "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right." *Khaimov v. Crist*, 297 F.3d 783, 785 (8th Cir. 2002) (quotation omitted).  Thus, the Court will not recommend a certificate of appealability issue or that in forma pauperis be granted on appeal.  28 U.S.C. § 2253(c).

Accordingly,

**IT IS HEREBY RECOMMENDED** that Petitioner's Petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED, as moot**.

-44-

**IT IS FURTHER RECOMMENDED** that Petitioner's Amended Petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 7) be **DENIED** and that this case be **DISMISSED**.

**IT IS FURTHER RECOMMENDED** that Petitioner's request for an evidentiary hearing be **DENIED**.

**IT IS FINALLY RECOMMENDED** that no certificate of appealability should issue and in forma pauperis not be granted on appeal.  28 U.S.C. § 2253.

The parties are advised that they have fourteen (14) days in which to file written objections to these recommendations pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact.  *See Thompson v. Nix*, 897 F.2d 356 (8th Cir. 1990).

Dated this 15th day of February, 2019.

_____/s/ Noelle C. Collins_____
NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE